# Richmond.

## FUNKHOUSER V. SPAHR.

### JANUARY 14, 1904.

1. CONSTITUTIONAL LAW—*Court of Appeals of Virginia—How Many Must Concur—Rehearing.*—The assent of at least three of the judges of this court is required by section 88 of the Constitution (1902) only when it is necessary to determine that a law is or is not repugnant to the Constitution of this State, or of the United States. In other cases, not involving the constitutionality of a law, section 3485 of the Code applies which requires this court to affirm "where the voices on both sides are equal." No rehearing is required.

2. WRITTEN INSTRUMENTS—*Construction.*—In construing constitutions, statutes and other written instruments, effect should be given to every word used, unless to do so would lead to a conclusion absurd in itself, or necessarily repugnant to the plain meaning of the instrument.

3. CONSTITUTIONAL LAW—*Construction—Views of Members of Convention.*—The meaning of constitutional provisions and legislative enactments is to be ascertained from the language used and not from the views of individual members of the body which proclaimed or enacted them, though the history of the times may be consulted in order to ascertain the reason as well as the meaning of the provision under consideration.

Petition to rehear a judgment of affirmance entered by an equally divided court at September term, 1903.

*Refused.*

The opinion states the case.

*Elder & Elder,* for the petitioner.

KEITH, P., delivered the opinion of the court.

Funkhouser, who was plaintiff in error in the case of *Funkhouser* v. *Spahr,* asks a rehearing of the judgment rendered against him at the September term of this court in pursuance of section 3845 of the Code of 1887, which is as follows:

"The appellate court shall affirm the judgment, decree, or order, if there be no error therein, and reverse the same, in whole or in part, if erroneous, and enter such judgment, decree or order, as the court whose error is sought to be corrected ought to have entered, affirming in those cases where the voices on both sides are equal: provided, however, that in order to declare, in any case, any law null and void by reason of its repugnance to the Constitution of the United States or the Constitution of this State, it shall be necessary that a majority of the judges elected to the Supreme Court of Appeals shall concur."

The contention of the petitioner is that the section above quoted is repugnant to the last sentence of section 88, Article VI., of the Constitution, which is as follows:

"Whenever the requisite majority of the judges sitting are unable to agree upon a decision, the case shall be reheard by a full bench, and any vacancy caused by any one or more of the judges being unable, unwilling, or disqualified to sit, shall be temporarily filled in a manner to be prescribed by law."

It will not do to segregate this sentence from its context. It is found in section 88 of Article VI. of the Constitution, which deals with the organization and jurisdiction of this court. After stating with precision the subjects over which this jurisdiction shall extend, it proceeds to set forth the manner in which that jurisdiction shall in certain cases be exercised, and declares that: "The assent of at least three of the judges shall be required for the court to determine that any law is, or is not, repugnant to the Constitution of this State or of the United States; and if in a case involving the constitutionality of any such law, not more

than two of the judges sitting agree in opinion on the constitutional question involved, and the case cannot be determined without passing on such question, no decision shall be rendered therein, but the case shall be reheard by a full court; and in no case where the jurisdiction of the court depends solely upon the fact that the constitutionality of a law is involved, shall the court decide the case upon its merits, unless the contention of the appellant upon the constitutional question be sustained. Whenever the requisite majority of the judges sitting are unable to agree upon a decision, the case shall be reheard by a full bench, and any vacancy caused by any one or more of the judges being unable, unwilling or disqualified to sit, shall be temporarily filled in a manner to be prescribed by law."

The Constitution which preceded that now in force provided that "the assent of a majority of the judges elected to the court shall be required in order to declare any law null and void, by reason of its repugnance to the Federal Constitution, or to the Constitution of this State." The provision of the former Constitution upon this subject was deemed inadequate by the convention which framed the present Constitution, and it inserted in lieu of it the provision as it now stands, which declares that "the assent of at least three of the judges shall be required for the court to determine that any law is or is not repugnant to the Constitution of this State or of the United States." Where the constitutionality of a law is drawn in question, it is plain, therefore, that the assent of three judges is necessary to decide the case. A less number cannot hold that a law is constitutional or that it is unconstitutional. The assent of three judges is essential to the judgment, is a jurisdictional necessity, and less than that number is incapable of pronouncing any judgment in such a case. The convention was impressed with the delicacy and importance of the jurisdiction exercised by courts in passing upon the constitutionality of a law. It felt that the provision upon the subject in the former Constitution, which only went

to the extent of holding that a law could not be declared null
and void, as repugnant to the Constitution of the United States
or of the State, unless three of the judges of the court concurred
in that conclusion, did not fully meet the requirements of the
situation, for under the law as it then stood an unconstitutional
law might, in a particular case, be binding and operative upon
the parties to the litigation because of an equal division among
the judges composing the court.   It considered that all cases in
which the constitutionality of a law is involved are of first im-
portance; that no statute which transcends the fundamental law
should be enforced against any citizen; and therefore it required
the concurrence of three judges for the disposition of the ques-
tion, and prohibited any judgment for or against the validity of
the law by an equally divided court.   The evil which the con-
vention sought to remedy was plain and obvious; the remedy
which it applied is adequate and complete.

In the concluding sentence of the section under consideration,
separated from what has been quoted, it is true, by a period but
wholly germane to and *in pari materia* with what has gone be-
fore, and with the manifest purpose of providing the means for
carrying out the object so clearly expressed in the preceding por-
tion of this section, the following language is used:   "Whenever
the requisite majority of the judges sitting are unable to agree
upon a decision, the case shall be reheard by a full bench, and
any vacancy caused by any one or more of the judges being una-
ble, unwilling, or disqualified to sit, shall be temporarily filled
in a manner to be prescribed by law."   Now, if the purpose had
been to prohibit the decision of any case by a divided court, we
presume that the Constitution would have said so.   The end
could have been reached by simply declaring that in every case
a majority of the judges sitting must agree upon a decision.   If
it had been intended that this sentence should reach a class of
cases not embraced in that which precedes it, the convention
might, with great propriety, have made it an independent para-

graph; but if that be not so, the language employed seems to be conclusive against the construction contended for by the petitioner. "Whenever the requisite majority of the judges sitting are unable to agree upon a decision, the case shall be reheard by a full bench." "Whenever" is an adverb of time. It is not the equivalent of "in any case." Its meaning, and the only meaning given to it by lexicographers, is "at whatever time." This sentence is not to be read as though the Constitution had said, "In any case in which the requisite majority of the judges sitting are unable to agree upon a decision, the case shall be reheard by a full bench," but "At whatever time it may happen that the requisite majority of the judges sitting are unable to agree upon a decision, the case shall be reheard by a full bench"; that is to say, the "case" and the "decision" in which the constitutionality of a law shall be called in question. What is meant by "the requisite majority?" Obviously, that "the assent of at least three of the judges shall be required to determine that any law is or is not repugnant to the Constitution of this State or of the United States."

If the sentence now being considered was meant to apply to cases in which a constitutional question does not arise, and to forbid the decision of such cases when the "voices on both sides are equal," in the language of section 3485, then it would have been enough to forbid the decision of any case unless a majority of the judges sitting should concur. The use of the word "requisite" would in such case be superfluous and unnecessary. The Constitution, however, uses the expression "requisite majority," and it is our duty in expounding it to give due effect to every word. We can reject no word as superfluous, unless it may be in an extreme case, in which not to do so would lead to a conclusion absurd in itself or necessarily repugnant to the plain meaning of the Constitution. "Requisite" means "essential, indispensable," and "requisite majority" must of necessity refer to the concurrence of three judges, for that satisfies, and alone satisfies, and gives force and effect to each word employed.

It is well to observe the precise language employed from another point of view. "If in a case involving the constitutionality of any such law, not more than two of the judges sitting agree in opinion on the constitutional question involved, and the case cannot be determined without passing on such question, no decision shall be rendered therein, but the case shall be reheard by a full court"; but no provision is made for the contingency of one of the judges being unable, unwilling, or disqualified to sit. In cases involving questions of the gravest importance it may well be that one of the judges, for some cause, cannot sit; and in that event, if the remaining four are equally divided, what becomes of the case? It can only be decided by a "full court," and there is no provision for supplying the place of the absent judge, unless recourse be had to the concluding sentence of this section, or a special court of appeals be organized under the succeeding section. Here, then, is a reason—and a sufficient reason—for the addition to section 88 of the sentence under discussion. Again, if that sentence applies to all cases, then it follows either that the "requisite majority" of three judges is necessary in all cases, which would render by far the greater part of the careful provision with respect to cases involving constitutional questions meaningless and nugatory, or, if it be contended that a court of three may hear and a majority of two may decide a case not involving a constitutional question, then the adjective "requisite," which qualifies "majority," and limits its meaning, is not only superfluous, but misleading, while one of the established canons of construction, as we have seen, is that effect shall be given to every word in the instrument to be construed, whether it be a will, a contract, a statute, or a constitution.

Letters from eminent members of the constitutional convention are copied into the petition, from which it would appear that, in their opinion, the convention intended to accomplish the result contended for by the petitioner, and its purpose was to

prohibit the decision of any case where the judges were equally divided.

In *United States* v. *Union Pacific R. R. Co.,* 91 U. S. 72, 23 L. Ed. 224, construing an act of Congress, the court said: "We are not at liberty to recur to the views of individual members in debate, nor to consider the motives which influenced them to vote for or against its passage. The act itself speaks the will of Congress, and this is to be ascertained from the language used. But courts may with propriety, in construing a statute, recur to the history of the time when it was passed, and this is frequently necessary, in order to ascertain the reason as well as the meaning of particular provisions in it."

In *United States* v. *Trans-Missouri Freight Ass'n,* 166 U. S. 318, 17 Sup. Ct. 550, 41 L. Ed. 1007, Justice Peckham uses the following language: "There is, too, a general acquiescence in the doctrine that debates in Congress are not appropriate sources of information from which to discover the meaning of the language of a statute passed by that body. The reason is that it is impossible to determine with certainty what construction was put upon an act by the members of a legislative body that passed it by resorting to the speeches of individual members thereof. Those who did not speak may not have agreed with those who did, and those who spoke might differ from each other; the result being that the only proper way to construe a legislative act is from the language used in the act, and, upon occasion, by a resort to the history of the times when it was passed"—citing a great number of authorities.

The English cases are to the same effect. In *The Queen* v. *Hertford College,* 3 Queens Bench. Div., at page 707, Lord Chief Justice Coleridge says: "We are not concerned with what Parliament intended, but simply with what it has said in the statute. The statute is clear, and the parliamentary history of a statute is wisely inadmissible to explain it, if it is not."

And this court, in *Sherwood* v. *A. & D. R. R. Co.,* 94 Va. at

page 301, 26 S. E. 946, uses the following language: "It is the duty of the court to ascertain the intention of the Legislature, and, when ascertained, to give it effect; and in the search for that intent it is its duty to consider the object of the statute and the purpose to be accomplished. It must reach the intent, however, by giving to the words used their ordinary and usual signification, and to every word and every part of the statute, if possible, its due effect and meaning. . . . The intent of the Legislature, therefore, is always to be sought for by giving a fair construction to the language used, attributing to the words their ordinary and popular meaning, unless it plainly appears that they were used in some other sense."

Our consideration of the case leads us to the conclusion that the convention did not intend to forbid the decision of the case by this court where the voices of both sides are equal, unless there is drawn in question the constitutionality of a law.

The petition to rehear is refused.

BUCHANAN, J., unites in the decision.                 *Refused.*