# Staunton

## COMMONWEALTH v. WERTH.

### September 7, 1914.

1. STATUTES—*Construction—Ejusdem Generis—Application of Rule.*— The rule that where a specific enumeration is followed by general words, the latter must be of the same kind as the former, usually called the doctrine of *ejusdem generis*, is only a rule of construction, and, as applied to statutes, intended to throw light on a statute of otherwise doubtful import, and has no application where the language of the statute plainly manifests a contrary purpose. In such case, the obvious intention of the legislature must be given effect rather than defeated by the misapplication of a rule, the conceded function of which is to elucidate what is obscure, and not to obscure that which is manifest.

2. STATUTES—*Construction—Legislative Intent—How Ascertained —* It is the duty of the court to ascertain the intention of the legislature, and, when ascertained, to give it effect. The intent is always to be sought for by giving a fair construction to the language used, attributing to the words their ordinary and popular meaning, unless it plainly appears they were used in some other sense.

3. TAXATION—*Income—Schedule D of Tax Bill—What Embraced— Fees of Attorneys.*—The subject matter of schedule D of the tax bill is "income" and not the sources from which it is derived, and although several sources are enumerated from which income may be derived, the general class "all other gains and profits derived from any source whatever ' embraces fees received by lawyers for their services, though not of the same kind as those enumerated; but even if the doctrine *ejusdem generis* were applied, such fees would still be included, as the enumerated classes include "all salaries," and among these are salaries of judicial officers, lawyers, physicians, and other professional men who receive compensation for their professional services, which are similar in kind to the earnings of professional men whose compensation for like services is paid in fees.

4.  TAXATION—*Double Taxation—License and Income Taxes—Attorneys at Law.*—Tax on the income of a lawyer who has to pay a license tax to carry on his business is not double taxation. License and occupation taxes, which are payable in respect to the privilege of engaging in or carrying on a particular business or vocation, are not income taxes, notwithstanding the fact that the amount of the tax payable by an individual may be measured by the amount of business which he transacts, or his earnings therefrom And conversely, although a person's entire income may be derived from a particular pursuit or trade, a tax on the income as such is not a license or privilege tax.

Error to a judgment of the Circuit Court of Tazewell county on a motion to exonerate the petitioner from the payment of an income tax. Judgment for the petitioner. Commonwealth assigns error.

*Reversed.*

The opinion states the case.

*Jno. Garland Pollard, Attorney-General,* and *C. B. Garnett, Assistant Attorney-General,* for the Commonwealth.

*Greever & Gillespie,* for the defendant in error.

WHITTLE, J., delivered the opinion of the court.

This is a writ of error to an order of the Circuit Court of Tazewell county, exonerating the defendant in error, W. H. Werth, a citizen and resident of Virginia, from tax on his income in excess of $2,000 derived from the practice of his profession as an attorney at law in this State for the year 1913.

Independent of constitutional authority, the power of the legislature to impose such tax is not denied, but the contention is that it has not seen fit to exercise that pre-

rogative. The question, therefore, for our determination involves the construction of schdule D of the tax bill, (Acts 1912, ch. 279, p. 572) and not the power of the legislature to enact it.

Schedule D reads as follows:

*"Tax on Income.*

"10.  .  .  .  .  The classification under schedule D shall be as follows, to-wit: The aggregate amount of income in excess of two thousand dollars, whether received, or due but not received, within the year next preceding the first of February in each year.

"Income shall include:

*"First.* All rents, except ground rents or rent charge, salaries, interest upon notes, bonds or other evidence of debt, of whatever description, of the United States, or any other State or county, or any corporation, company, partnership, firm or individual, collected or received during the year, less the interest due and paid during the year.

*Second.* The amount of all premiums on gold, silver or coupons.

*Third.* The amount sales of live stock and meat of all kinds, less the value assessed thereon the previous year by the commissioner of the revenue.

*Fourth.* The amount of sales of wood, butter, cheese, hay, tobacco, grain, and other vegetables and agricultural products during the preceding year, whether the same was grown during the preceding year or not, less all sums paid for taxes and for labor, fences, fertilizers, clover or other seed purchased and used upon the land upon which the vegetables and agricultural productions were grown or produced, and the rent of said land paid by said person, if he be not the owner thereof.

*Fifth.* All other gains and profits derived from any source whatever."

The circuit court held, and the defendant in error con-

tends, that the enumeration in schedule D as to what shall be included by the term "income," is intended as a legislative classification of certain incomes which are to be subject to taxation, and that all other incomes are not subject to taxation. This contention is pressed, notwithstanding the comprehensive language of the fifth clause. That clause, it is said, in accordance with the doctrine of *ejusdem generis,* must be limited to incomes derived from sources of the same kind as those enumerated in previous clauses of the schedule, and does not include incomes from licensed professions, trades or businesses.

The rule invoked, at last, is only a rule of construction, and intended to throw light on a statute of otherwise doubtful import, and has no application where the language of the statute plainly manifests a contrary purpose. In such case, the obvious intention of the legislature must be given effect rather than defeated by the misapplication of a rule, the conceded function of which is to elucidate what is obscure, and not to obscure that which is manifest.

"It is the duty of the court to ascertain the intention of the legislature, and, when ascertained, to give it effect, and in the search for that intent it is its duty to consider the object of the statute and the object to be accomplished. It must reach the intent, however, by giving to the words used their ordinary and usual significance, and to every word and every part of the statute, if possible, its due meaning. . . The intent of the legislature, therefore, is always to be sought for by giving a fair construction to the language used, attributing to the words their ordinary and popular meaning, unless it plainly appears they are used in some other sense." *Funkhouser* v. *Spahr,* 102 Va. 313, 46 S. E. 378, 380.

The subject matter of schedule D is "income," and not the sources from which it is derived; and the reverse of that would have to be the case in order to apply the

rule of *ejusdem generis* to its interpretation. The language of the schedule, read as a whole, leaves no escape from the conclusion that it was the intention of the legislature to impose a tax on incomes generally. After enumerating in the first four clauses what "income" shall include with respect to certain sources from which it may be derived, the fifth clause declares that it shall include: "All other gains and profits derived from any source whatever." This broad language would in large measure be nullified by limiting its operation to income derived, not "from any source whatever," but only from sources similar to those embraced in the enumerated classes. By what process of ratiocination can it be said that income derived from "any source whatever" is the equivalent of incomes derived only from "special sources?" To state the proposition is to answer it. Still, if it were necessary to invoke the doctrine of *ejusdem generis* to reveal the intention of the legislature, the result would be the same. "All salaries" are enumerated in schedule D, and income from salaries of judicial officers, lawyers, physicians and other professional men, who receive compensation for their professional services in that way is similar in kind to the earnings of professional men whose compensation for like services is paid in fees. Can it reasonably be supposed that it was the purpose of the legislature to impose a tax upon the income of the one and exempt the income of the other? Such construction would contravene the spirit, if not the letter, of the uniformity clause of the Constitution, and is not justified by the language of the statute.

It is furthermore objected that taxing the income of a lawyer is double taxation, since he is required to pay a license tax for the privilege of practicing his profession.

This contention loses sight of the distinction between a license and occupation tax exacted for the privilege of engaging in or carrying on a particular vocation or bus-

iness and a tax on the income derived from such vocation or business.

"License and occupation taxes, which are payable in respect to the privilege of engaging in or carrying on a particular business or vocation, are not income taxes, notwithstanding the fact that the amount of tax payable by an individual may be measured by the amount of business which he transacts or his earnings therefrom. And conversely, although a person's entire income may be derived from a particular pursuit or trade, a tax on the income as such is not a license or privilege tax. Thus, a tax on sales of a particular commodity, or a tax on the dealer measured by the amount of his sales, is not an income tax." Black on Income Taxes, sec 3, citing *Com'th* v. *Brown,* 91 Va. 762, 21 S. E. 357, 28 L. R. A. 110.

So also, an ordinance of the city of Richmond, providing that lawyers and others should be divided into classes, and imposing a graduated tax on those in the several classes, was held not to be an income tax. *Ould* v. *City of Richmond,* 23 Gratt. (64 Va.) 464, 14 Am. Rep. 139; *City of Petersburg* v. *Cocke,* 94 Va. 244, 26 S. E. 576, 36 L. R. A. 432; *Postal Tel. Co.* v. *City of Norfolk,* 101 Va. 125, 43 S. E. 207.

In conclusion, it may not be amiss to call attention to the fact that since this statute has been in force (1903) the practical construction placed upon it by the fiscal officers of the Commonwealth has been that lawyers are amenable to the income tax imposed by it; and, so far as we are advised, with the exception of the present case, the correctness of that construction has not been drawn in question. *Smith* v. *Bryan,* 100 Va. 206, 40 S. E. 652.

We are of opinion to reverse the order of the Circuit Court of Tazewell county and make such order as that court ought to have entered.

*Reversed.*